**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**AUG 27 2003**

**PATRICK FISHER**
**Clerk**

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

---

ANNAMARIE ORTLIEB,

     Plaintiff-Appellant,

v.

PAT HOWERY, individually and in
his capacity as Chief Executive
Officer of the Grand River Hospital
District; RON SMITH, individually
and in his official capacity as
Laboratory Director for Grand River
Hospital District; GRAND RIVER
HOSPITAL DISTRICT,

     Defendants-Appellees.

No. 02-1362
(D.C. No. 00-S-2349 (OES))
(D. Colo.)

---

**ORDER AND JUDGMENT** *

---

Before **KELLY** , **ANDERSON** , and **O'BRIEN** , Circuit Judges.

---

     After examining the briefs and appellate record, this panel has determined

unanimously to grant the parties' request for a decision on the briefs without oral

---

\*     This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

Plaintiff/appellant Annamarie Ortlieb appeals from the district court's[1] grant of summary judgment in favor of defendant/appellee Ron Smith, on the basis of qualified immunity, with respect to her invasion of privacy claim brought pursuant to 42 U.S.C. § 1983. Our jurisdiction arises under 28 U.S.C. § 1291, and we affirm.

We need not repeat the complete procedural and factual history of this case, which the district court fully set out in its July 12, 2002, order granting Mr. Smith's motion for summary judgment. On appeal,

> [t]his court reviews the legal issues surrounding the grant of summary judgment based on qualified immunity de novo, considering all evidence in the light most favorable to the nonmoving parties under Rule 56(c), Federal Rules of Civil Procedure Summary judgment is ultimately appropriate when there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law.
>
> This court, however, reviews summary judgment orders deciding qualified immunity questions differently from other summary judgment decisions because of the purposes behind qualified immunity. When a § 1983 defendant raises the defense of qualified immunity on summary judgment, the burden shifts to the plaintiff to show that 1) the official violated a constitutional or statutory right; and 2) the constitutional or statutory right was clearly established when the alleged violation occurred. First, "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional

---

[1] A magistrate judge presided by consent of the parties.

right?" *Saucier v. Katz*, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). If so, we must subsequently ask "whether the right was clearly established." *Id.* If the plaintiff does not satisfy either portion of the two-pronged test, the Court must grant the defendant qualified immunity.

*Olsen v. Layton Hills Mall*, 312 F.3d 1304, 1311-12 (10th Cir. 2002) (quotations and citations omitted).

The facts relevant to the issue raised on appeal, viewed in the light most favorable to Ms. Ortlieb, are as follows: Ms. Ortlieb, a medical technologist employed by defendant Grand River Hospital District at its Clagett Memorial Hospital facility, suffered a severely broken leg while on an outing with other Clagett hospital employees in May 1999. She was taken to Clagett Memorial for initial treatment of her injuries. When she arrived at the hospital, "everyone came out because [she] was an employee, and . . . was trying to assist." Aplt. App. at 157. During treatment, Ms. Ortlieb's x-rays were hung in the Clagett x-ray department and were viewed by several hospital employees, including the doctors and ER personnel who treated her.

Her fracture was so severe that the ER doctor decided to transport her to a larger hospital for surgery. Her surgeon expressed some concern that he would be able to save her leg because her bones were splintered so badly. *Id.* at 157-58. Ms. Ortlieb returned to Clagett Memorial for additional x-rays after experiencing extreme post-surgical pain. *Id.* at 158-59.

Ms. Ortlieb informed defendant Ron Smith, her immediate supervisor at Clagett Memorial, of her injuries and need for medical leave. She told him that her doctor advised that a "normal" leg fracture would usually require six to twelve months before it would be healed well enough for her to return to full time, regular work, but that her fracture was not "normal." *Id.* at 59. Grand River granted Ms. Ortlieb medical leave from May 2, 1999, through July 26, 1999. *Id.* at 84-85. She then requested an indefinite extension of medical leave based on the severity of her injuries. *Id.* at 85. Along with her request, she attached her surgeon's "Statement of Disability," in which he stated she complained of "pain and swelling L. lower leg - unable to weight bear. Confirmed on x-ray." *Id.* at 86.

In making his decision whether to recommend granting her request for an extension, Mr. Smith retrieved Ms. Ortlieb's leg x-rays from the Clagett x-ray department without Ms. Ortlieb's permission and viewed them. Based on his review of these x-rays and his understanding of the severity of her condition, Mr. Smith expressed his opinion to hospital administration that Ms. Ortlieb would never be "100 percent able to do [her] previous job." *Id.* at 161-62. Grand River denied the request for indefinite extension of medical benefits, and Ms. Ortlieb was terminated in November 1999 after she moved to Oregon to live with her son.

Ms. Ortlieb sued Mr. Smith for invading her right to privacy by obtaining and viewing her x-rays. [2] In conducting its qualified immunity review using the *Saucier* analysis, the court cited *A.L.A. v. West Valley City*, 26 F.3d 989, 990-91 (10th Cir. 1994), and applied *Flanagan v. Munger*, 890 F.2d 1557, 1570 (10th Cir. 1989).

In *Flanagan*, we examined whether a state actor had violated the privacy rights of an individual by disclosing information from a personnel file. In determining whether "information contained in personnel files is of such a highly personal or sensitive nature that it falls within the zone of confidentiality," we noted that a court "must consider, (1) if the party asserting the right has a legitimate expectation of privacy, (2) if disclosure serves a compelling state

---

[2] Although she ultimately argues on appeal only that "Smith violated Ortlieb's . . . interest in the privacy of her medical records when he took it upon himself to view her x-rays," Aplt. Br. at 13, Ms. Ortlieb obliquely suggests that Mr. Smith also violated her right to privacy in her medical records by *disclosing* her x-rays to others. *See id.* at 5-6 ("Smith violated her right to privacy when he reviewed *and published* . . . Ortlieb's medical records." (emphasis added)). She cites cases involving the publication of medical records. *See id.* at 11. But in her response to the defendants' motions for summary judgment, Ms. Ortlieb alleged that Grand River Hospital violated her right to privacy when it allowed the x-rays to be "shared inappropriately" by allowing them to be "viewed by anyone who cared" while hung in the Clagett x-ray department in May. *Id.* at 139. She never testified or asserted in her response to Smith's motion for summary judgment that Mr. Smith showed or published the x-rays to anyone when he went to the x-ray department in August and pulled them for his own review. *See id.* at 139, 146-47 (arguing only that Smith's review of her x-rays violated her right to privacy). Thus, we do not address any claim regarding disclosure not raised or addressed below.

interest, and (3) if disclosure can be made in the least intrusive manner." 890 F.2d at 1570. Analyzing only the first prong of this test, we observed that "[o]nly highly personal information is protected" and that "data in files which is not of a highly personal or sensitive nature may not fall within the zone of confidentiality." *Id.* (quotation omitted). We cited *Mangels v. Pena*, 789 F.2d 836 (10th Cir. 1986), an analogous § 1983 action for violation of the constitutional right to privacy. In *Mangels* we explained that,

> [t]he Due Process Clause directly protects fundamental aspects of personal privacy against intrusion by the State. One aspect of this substantive due process arises from the individual interest in avoiding disclosure of personal matters. Due process thus implies an assurance of confidentiality with respect to certain forms of personal information possessed by the state.
> . . .
> Information is constitutionally protected when a legitimate expectation exists that it will remain confidential while in the state's possession. The legitimacy of an individual's expectations depends, at least in part, upon the intimate or otherwise personal nature of the material which the state possesses.

*Mangels*, 789 F.2d at 839 (quotations and citations omitted). We subsequently have noted that only "*confidential* medical information is entitled to constitutional privacy protection," *A.L.A.*, 26 F.3d at 990 (emphasis added), and that "medical records, which may contain *intimate facts of a personal nature*, are well within the ambit of materials entitled to privacy protection," *Lankford v. City of Hobart*, 27 F.3d 477, 479 (10th Cir. 1994) (emphasis added).

-6-

We concluded in *Flanagan* that disclosing reprimands in a personnel file did not violate the plaintiffs' right to privacy, without reaching the question whether the state had a compelling interest to disclose that information. 890 F.2d at 1570. Here, the district court began its *Flanagan* analysis with the presumption that "an individual has a legitimate expectation of privacy in medical records," as though the legitimacy of Ms. Ortlieb's expectation had been established. Aplt. App. at 321. The court found as undisputed, and Ms. Ortlieb does not challenge these findings on appeal, that (1) the only medical records Mr. Smith obtained and viewed were the leg x-rays; (2) Ms. Ortlieb had sought and obtained medical leave and an extension of that leave based on her leg injury; and (3) the x-rays contained no sensitive or intimate information that would lead to embarrassment, ridicule, or controversy. *Id.* at 321-22. On these facts, the court concluded that Ms. Ortlieb's right to privacy in her x-rays was outweighed by Mr. Smith's "substantial interest of ascertaining the nature and extent of plaintiff's injury in light of the demands of her job and her leave status." *Id.* at 322. The district court granted qualified immunity to Mr. Smith, concluding that no constitutional violation occurred because Ms. Ortlieb had "failed to sufficiently allege that Smith's conduct violated her right to privacy, and therefore, Smith is entitled to judgment as a matter of law." *Id.* at 320.

On appeal, Ms. Ortlieb's central argument is two-fold: she claims that (1) she has an absolute right to privacy in her x-rays and (2) Mr. Smith had no countervailing need to view them. We disagree with the first assertion and therefore need not address the second. Thus, while our analysis differs from that of the district court in that we do not reach the second prong of the *Flanagan* test, we agree with the court's ultimate conclusion that Ms. Ortlieb's right to privacy was not violated.

As the underlying undisputed facts in this case clearly demonstrate, there was nothing confidential about the fact that Ms. Ortlieb had a severely broken leg. Ms. Ortlieb was a hospital employee being treated at the hospital where she worked for a severe injury suffered during an outing with other hospital employees, and, according to her, the whole hospital staff came to her aid when she arrived for treatment. Thus, that information was well-known and publicized with no intrusion into her private affairs. Further, because she supported her request for an indefinite extension of medical benefits with her doctor's report stating that his opinion of continuing disability was corroborated with her x-rays, she had no reasonable expectation that the x-rays themselves would be confidential or protected from her supervisor's reach or purview.

The district court further properly noted that the x-rays, unlike written medical records, contained no facts or information of an intimate or personal

nature about which Ms. Ortlieb could form a legitimate or reasonable expectation of confidentiality notwithstanding her claim for benefits. Under these circumstances, pursuant to *Mangels*, *Flanagan*, and *Lankford*, Ms. Ortlieb had no constitutionally-protected privacy interest in her x-rays. She therefore could not meet *Saucier's* first requirement that she allege facts establishing a violation of a constitutional right. The district court properly concluded that Mr. Smith is entitled to qualified immunity.

The judgment of the United States District Court for the District of Colorado is AFFIRMED.

Entered for the Court

Stephen H. Anderson
Circuit Judge